# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:12CR319 |
| | ) | |
| PLAINTIFF/APPELLEE, | ) | ON APPEAL FROM JUDGMENT |
| | ) | ISSUED BY A MAGISTRATE |
| vs. | ) | JUDGE |
| | ) | |
| MARK J. BAUM, | ) | |
| | ) | |
| DEFENDANT/APPELLANT. | ) | |

Defendant/Appellant Mark J. Baum ("Baum") timely appeals the June 15, 2012 judgment of Magistrate Judge Kathleen B. Burke. This Court has jurisdiction under 18 U.S.C. § 3402, Fed. R. Crim. P. 58(g)(2)(B), and LCrR 58.3. Both parties have filed their briefs. (Doc. Nos. 15-1, 17, 18.) For the reasons discussed herein, the judgment is **AFFIRMED**.

## I.

On February 27, 2012, National Park Service Ranger Cindy Swaggard issued a traffic citation to Baum under 36 C.F.R. § 4.22(b)(1) for operating a motor vehicle without due care in the Cuyahoga Valley National Park ("the Park").

On June 15, 2012, after being advised of the statutory maximum penalties and of his rights, Baum entered a plea of not guilty and proceeded to trial before the Magistrate Judge,

representing himself.[1] A transcript of the proceedings is in the record before this Court. (Doc. No. 11, hereafter "Trial Tr.".)[2]

Swaggard, who had been employed as a ranger for 27 years, including 20 years in the Park, testified that, on the day in question, she was on active duty in the Park shortly after 5:00 p.m. She pulled out of the ranger station and followed a dark blue Volkswagen Golf northbound on Riverview Road. (Trial Tr. at 25.) At approximately 5:22 p.m., Swaggard, driving directly behind the Golf, observed it go left of center at an S-curve at a railroad track on Riverview Road. (*Id*. at 25, 33.) The Golf went so far left of center that its passenger side tires were touching the double yellow line and the bulk of the car was left of the double yellow line in the wrong lane. (*Id*. at 25-26.) Swaggard testified that the double yellow line was plainly visible. (*Id*. at 26.) The Golf was also traveling 49 miles per hour in a 45 miles per hour zone, as measured by Swaggard's radar unit.[3] (*Id*. at 27.) When Swaggard observed the traffic violation, she had no idea who was driving the Golf or to whom it belonged. (*Id*. at 27, 28.)

Swaggard called dispatch to check the Golf's license plate and pulled the Golf over using her cruiser's lights and siren. (*Id*. at 28.) She approached the Golf on the passenger side due to the volume of traffic on Riverview Road and motioned to the sole female passenger to roll down the window. Swaggard introduced herself and told the driver why he had been stopped. (*Id*. at 28-29.) Swaggard asked the driver for his license, registration and proof of

---

[1] The offense charged is "punish[able] by a fine as provided by law, or by imprisonment not exceeding 6 months, or both[.]" 36 C.F.R. § 1.3(a). Therefore, under 18 U.S.C. § 3581(b)(7), it is a Class B misdemeanor which, under 18 U.S.C. § 19, is a petty offense. The Magistrate Judge had jurisdiction to exercise the court's adjudicative authority under 18 U.S.C. § 3401(a), Fed. R. Crim. P. 58, and LCrR 58.1.

[2] "The record consists of the original papers and exhibits in the case; any transcript, tape, or other recording of the proceedings; and a certified copy of the docket entries. . . ." Fed. R. Crim. P. 58(g)(2)(C).

[3] Baum maintained this speed even after entering a 35 miles per hour zone during the encounter. (*Id.* at 38.)

insurance; however, the driver indicated that he did not have his license with him. The driver identified himself as Mark Baum. (*Id.* at 29.)

Baum immediately complained to Swaggard that he was being harassed and targeted by the Park Service, but Swaggard did not understand Baum's meaning because she had not previously met him. (*Id.* at 30, 35.) When Swaggard told Baum she had stopped him for going left of center, Baum admitted to Swaggard that he had "straightened out the road." (*Id.* at 30.) Swaggard cited Baum for operating a motor vehicle without due care, but she did not cite him for speeding or for driving without a valid license in his possession. (*Id.* at 31.)[4]

At trial, Baum represented himself. He called his minor daughter ("J.B.") as his sole defense witness; she had been a passenger in the car when Baum was cited. Baum also offered four photographs into evidence, with the government's consent;[5] however, none of the photographs was provided to this Court for purposes of the appeal.[6]

J.B. testified that she saw Swaggard parked at the Ranger Station as they drove on Riverview Road. (Trial Tr. at 43.) She pointed out the Ranger's car to Baum. (*Id.* at 48.) J.B. also

---

[4] On cross-examination, it was revealed that Swaggard also asked Baum for consent to search his vehicle because she had discovered he had a previous ticket for possession of a controlled substance. Because he was aggressive and seemed nervous, Swaggard felt the request to search was wise. Baum consented. Swaggard found nothing during the search, and she suspended her search and released Baum when she subsequently got an emergency call. (Trial Tr. at 37.)

[5] The record reflects that these four photographs were marked as defendant's Exhibits 1, 2, 3, and 4. (Trial Tr. at 43.)

[6] It would be Baum's responsibility to supply these photographs to the Court. Under LCrR 23.2(c), following a trial, the party who presented an exhibit for admission is responsible for retaining it. Baum has attached thirteen (13) photographs to his reply brief (Doc. No. 18); however, none of these photographs bear any original marking to indicate that they include the four photographs admitted into evidence. In fact, the reply brief suggests that they are new photographs, recently taken for purposes of this appeal. On appeal, this Court may only consider the exact four photographs admitted into evidence at trial. *See* Fed. R. Crim. P. 58(g)(2)(C) ("[t]he record consists of the original papers and exhibits in the case[.]"). Additional "evidence" is not to be considered, unless a party seeks and is granted leave to supplement the record on appeal. *See* Fed. R. App. P. 10(e). However, "'[t]he purpose of . . . [Appellate Rule 10(e)(2)] is to allow the [ ] court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals.'" *United States v. Smith*, 344 F.3d 479, 486 (6th Cir. 2003) (quoting with alterations *S&E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982)).

testified that Baum's passenger-side tires never touched the double yellow line and that at no time on February 27, 2012 was her father driving beyond three miles an hour over the speed limit. (*Id*. at 45.) However, on cross-examination, J.B. acknowledged that she possesses neither a driver's license nor a learner's permit; that she did not regularly monitor her father's driving and had no reason to do so on the day of the citation; and that she was not in the habit of checking her father's speed while driving and had not, in fact, checked the speedometer on that day. (*Id*. at 49-52.)

Baum did not move for a judgment of acquittal under Fed. R. Crim. P. 29 either when the government rested its case or at the conclusion of all the evidence. After considering the evidence, and having concluded that it was "the position of the vehicle in relation to the double yellow line" that was at issue, Magistrate Judge Burke made the credibility determination "that the officer was in a better position to observe the position of the vehicle here than Mr. Baum's daughter was." (Trial Tr. at 65.) She further found that Swaggard "had no motivation to either target Mr. Baum or to have otherwise stated the facts to be different than what she actually observed and wrote down on the date in question." (*Id*.) Lack of targeting or harassing was buttressed by the fact, as found by the Magistrate Judge, that, although Baum was actually exceeding the speed limit and driving without carrying his license, he was not cited for either of these offenses. (*Id*.) The Magistrate Judge, therefore, found Baum guilty of operating a motor vehicle without due care.

After informing Baum that the statutory maximum penalty was six months in prison, a $5,000 fine, and a $25 non-waiveable processing fee and that the scheduled forfeiture amount for the normal violation was a $100 fine with a $25 processing fee, and after affording him the opportunity to allocute with respect to the issue of penalty (Trial Tr. at 66-68), the

4

Magistrate Judge imposed a fine of $100 and a processing fee of $25, for a total of $125. (*Id*. at 69.) The Magistrate Judge also advised Baum of his appeal rights. This appeal followed.

## II.

Under Fed. R. Crim. P. 58(g)(2)(D), a defendant appealing a magistrate judge's decision "is not entitled to a trial de novo by a district judge." Rather, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The district court must review the magistrate judge's legal determinations de novo and factual findings for clear error. *United States v. Evans*, 581 F.3d 333, 338 n. 4 (6th Cir. 2009) (citing *United States v. Ali*, 557 F.3d 715, 720 (6th Cir. 2009); *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008)).

Where, as here, a defendant attempts to challenge on appeal the sufficiency of the evidence at trial[7] without having first sought acquittal under Fed. R. Crim P. 29(a) at both the close of the government's case in chief and the close of all the evidence, the sufficiency of the evidence is reviewed under the "manifest miscarriage of justice" standard. *United States v. Kuehne*, 547 F.3d 667, 697 (6th Cir. 2008) (citing *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002)). Under that standard, a reviewing court may reverse a conviction only "if the record is devoid of evidence pointing to guilt." *Kuehne*, 547 F.3d at 697; *Carnes*, 309 F.3d at 956.[8]

---

[7] Baum's brief is not particularly clear; however, construing it liberally, as is typical when dealing with pro se parties, the Court is assuming that Baum believes the evidence was insufficient to support his conviction.

[8] The ordinary standard of review for sufficiency of the evidence where Rule 29 motions have properly preserved the issue for appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

### III.

As already noted, Baum's three-paragraph brief is not particularly clear as to the substance of his appeal. However, he "request[s] the court to reconsider the fact that [he] and his witness were both aware of the Park Ranger following behind[.]" (Doc. No. 15-1 at 81.) Apparently, he makes this assertion as an argument that, as a person who knew he was being followed by a park ranger, he would not have driven as Swaggard described. Baum "[h]onestly [s]wears that at worst [his] driver's tire made contact with the centerline [sic]." (*Id.*) In other words, Baum is asking this Court, sitting as a reviewing court, to credit his version of the facts. In his reply brief, he also asks this Court to consider new evidence, namely, recently shot photographs of other drivers crossing the double yellow line at purportedly the same place on Riverview Road.

It is not this Court's role to re-weigh the evidence or to consider new evidence. Rather, where, as here, the appeal challenges the Magistrate Judge's findings of fact, this Court must examine them for clear error[9] and, under the circumstances of this case, may reverse the conviction only "if the record is devoid of evidence pointing to guilt." *Kuehne*, 547 F.3d at 697; *Carnes*, 309 F.3d at 956. The Magistrate Judge was entitled to credit the testimony of a trained, experienced, professional law enforcement officer over that of Baum's daughter, who is not licensed to drive and admitted that she does not typically monitor her father's driving. Further, the Magistrate Judge was entitled to conclude that the officer was in a better position than J.B. to

---

[9] There is no apparent challenge to the Magistrate Judge's determination that the only legal issue in the case was whether Baum's vehicle was over the double yellow line and, therefore, operated without due care. As a result, only facts that go to that issue are relevant. There is also no challenge to the penalty imposed.

judge the location of Baum's car in relation to the double yellow line. The record is not devoid of evidence pointing to guilt.[10]

## IV.

Although Baum clearly does not agree with the Magistrate Judge's decision, the evidence presented at trial was sufficient to find him guilty of operating a motor vehicle without due care. Accordingly, Baum's conviction and penalty are **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: October 29, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10] Even if the Court could apply the standard set forth in *Jackson*, *supra*, it would reach the same conclusion.